We'll hear argument next in Goldman v. Trinity School of Medicine, case number 241827. Thank you all. Your Honors, before I begin, I am severely visually disabled, and so I don't have the ability to reference notes. And if Your Honors ask me a question that I just can't refer to, I just respectfully request that perhaps you would let me submit an answer in writing subsequent to the hearing, because I just have no way to reference anything while I'm before you. Okay. Well, try your best. We appreciate it. Thank you, Your Honors. May I begin? Yes. Good morning, Your Honors. May it please the Court. We're here today dealing with a matter of whether CPLR 302 controls whether a company doing business in the state of New York should be subject to jurisdiction within the state of New York. In this particular case... Isn't that the question, whether it's doing business in New York? I'm sorry? Isn't that the question, whether it is doing business in New York? The way you framed it, you've assumed it was doing business in New York. Well, Your Honor, I believe it is doing business in New York. My client interacted with the company. First of all, the company is – that's a little bit unclear. They are a Caribbean medical school. That's what's on their website. They do have an office in the United States, in Georgia. So we are, in any case, dealing with a diversity situation. Now, in this particular case, my client interacted with the law school, seeking admission to their law school. He had conversations with them. The law school sent a representative. I believe his name was Mike Mitchell. Was it a law school? Did I say the law school? I'm sorry, the medical school. I apologize, Your Honor. The medical school sent a representative to New York to interview my client. The medical school offered my client admission to the medical school, sent him a contract to a New Yorker, which he signed in New York. This is not just a casual, accidentally passing through like Volkswagen, you know, where it just so happens that this was New York. The defendants were clearly aware they were intentionally doing business in New York. Now, in the bigger picture, for several years – and this is all in our briefing – they made multiple trips to New York to interview students in New York. Every one of those trips could be characterized as a transitory presence. I mean, they came in, and then they went out again, right? I understand, but he interviewed – but it isn't just – it's a specific purpose. Well, we're talking about their presence. Their presence. I understand, but on a bigger picture, yes, one of the facets of the law school – of the medical school – is to retain students from New York. Are you arguing general jurisdiction? No. Just arguing specific. I'm arguing specific, but I'm expanding it to general approximately 7 percent. That's what I'm asking. Are you arguing general, or are you just relying on specific? I'm also pointing out the general, but it's not the primary issue, because I think the specific interactions with the student are adequate to establish jurisdiction with respect to this particular student. But it goes beyond that. Approximately 7 percent of all the students they admit are New York residents. They sign contracts in New York. These students often want to go back to New York, which means the school has to have relationships with medical facilities in New York in order for that to happen. They made, aside from the trip they made from a client, they made approximately 10 other trips at least to New York with the specific intent of retaining students from New York. These people signed contracts in New York. So it's hard to imagine how this is – this is certainly not – A foreign medical school that recruits American students would likely be doing the same thing in virtually every state, correct? That may – So if your argument is correct, then they subjected themselves to jurisdiction everywhere. That's potentially true, Your Honor. When you choose to contract – when you choose to do business on a nationwide basis, you interact with students on a nationwide basis. You send your representatives to talk to students on a nationwide basis. Why is it unfair that you could be – I'm not arguing. No, I'm just saying, but yes, potentially they've exposed themselves to jurisdiction in every state for which they retain students. You know, this is just – this is not like a Bristol-Myers-Squibb situation where their interactions with the state, while it may be generally related to the – The injury that is alleged is an injury that was sustained where? I believe it was partially sustained within the – at the school. But some of it applies – there's a GBL 349 claim where it is our perspective that by the nature – in the state of New York, a student who goes to a foreign medical school is unable to conduct their residency in the state of New York. So that person then – I'm sorry? So your client hypothetically would be – or somebody in your client's position hypothetically would be injured by not being able, if they passed the course of tuition, get a job in New York. Correct. Do his residency in New York, which was his intention. That's injury in New York? Well, I believe so, since he was – The person then might not be able to get a job in Idaho either. But New York specifically was his intention to return to New York after school. And there's a specific law in New York, which doesn't necessarily – everywhere, but New York specifically excludes students who go to a foreign medical school from working as a resident in the state of New York if they've spent more than six weeks of their clinical program, which is typically two years. If they spend more than six weeks outside of the country where the medical school is located. And so, as a result of that, since it is a Caribbean medical school, which is clearly set forth on their page – Now, it's possible that they could have an exemption to this, but it is our understanding that they do not have an exemption to this. So, by its design, from the first minute they contacted our client in the state of New York, they made representations that their students are able to do residencies in New York. And they talk about their statistics, lots of people from New York that make all of these representations. We believe that would certainly be a GBL 349 claim because my client would never have gone to this school if he was aware he would not be able to do residency in the state of New York. He would have gone somewhere else. There are schools that do get exemptions, to the best of our knowledge. Trinity is not one of them. So, my client was induced into agreeing to attend this school, all taking place from New York, that he never would have gone to. So, we believe that these are sufficient contacts. They're not accidental. It's intentional. By this school, 7% of their students come from the state of New York. That's not an insignificant number of students. I don't have an exact number. But it is clear this is not an accidental passing through. This is not the Volkswagen case. You get a car accident somewhere that you didn't intend to be. This is not Bristol-Myers. We were arguing that. You know, because of other interactions that this defendant may have had with the state of New York, that's why they should have jurisdiction. Thank you very much. Thank you. Thank you, Your Honors. May it please the Court, Jacqueline Voronov on behalf of Appellee Trinity School of Medicine. Your Honors, this case does not involve a situation where a medical school was doing business in New York. An admissions recruiter passed through New York as part of a national recruiting campaign in furtherance of efforts to maintain a diverse and comprehensive student body. There were never any concerted efforts to meet with the appellant in this case. They didn't travel here to meet specifically with the appellant. They traveled here for a total of one day. And in that one day, there were a number of conversations had with potential applicants. What that resulted in— Does your record indicate whether they reached out to the plaintiff? I mean, how did it come about that the plaintiff was interviewed? The plaintiff in this case received marketing emails that were generally forwarded between the years 2014 to 2016. Plaintiff appellant responded to those marketing emails and submitted an application to the medical school. He had already applied to the medical school, and then the school, on this occasion, interviewed him. That is correct. It didn't schedule an interview specifically to come out to meet with plaintiff. There was a day that was designated that the appellee's agent would be passing through New York. They had a Regis space rented, and the appellant was one of several who scheduled a time slot to get general information about the school at that point in time. Because the appellant in this case didn't brief the general jurisdiction issue, I want to sort of move that to the end of my rebuttal and focus squarely on the allegation that there was specific jurisdiction in this case. And I think that the record is very clear that Trinity never purposely availed itself of the privileges and the benefits of doing business in New York. There has never been a case in this jurisdiction that has stood for the proposition that an admissions officer from a school passing through, conducting an interview, subjects the school to specific jurisdiction. And as Your Honor astutely pointed out, if that were the case, they would be subject to personal jurisdiction in every school or in every state and every time they had a conversation with a potential applicant. And that is not what happened here. They were part of a campaign nationally in every state as well as Canada. Is there a New York case going either way? I'm sorry? Is there a New York case going either way? We have not been able to unearth one, and the reason I believe that is because it does not exist. There are cases, the case of Baylor, Davis versus Baylor, which is out of Missouri, is I believe instructive here. And it does in that case delineate certain conduct that would be considered active, purposeful availment of activities within the state. Why wouldn't coming to New York and interviewing a prospective student, why wouldn't that be enough for specific jurisdiction? Because Trinity has gone to great lengths not just to be in New York, it's gone to great lengths to avoid New York. It has no contacts in New York. But it came. Why isn't that enough? Despite all the other efforts, it came, it interviewed the student. Why isn't that enough? It was just a transitory passing. They didn't come here to avail themselves of the privilege of doing business in New York. It was transitory, which the McKee case tells us is not sufficient to confer personal jurisdiction. So remind me, what percentage of students at Trinity are from New York? In that year, in the year in question, it was 7%. And we would submit that the far more relevant number is the 93% of students that did not matriculate from New York. But even if we were to indulge, and it's important to highlight the jurisdictional facts here. And that is Trinity has no employees in the state of New York. It doesn't own any property in New York. It doesn't lease property in New York. It has never held a career fair in New York. There are no bank accounts, no phone numbers. There's no agents here. There's no fairs here. There's no classes or courses offered here. It doesn't have any hospital affiliations here. It doesn't have any clinical clerkships offered here. And it is very much not an over-exaggeration to say that there's not even been a Trinity agent who has set foot on New York's soil since 2018. The clinical rotations that are offered by Trinity are not offered in New York. They're offered in Warner Robins, Georgia, and Baltimore, Maryland. Any contact that Trinity had with New York concluded well before the appellant had ever even applied to law school. Now, there was two and a half months of jurisdictional discovery that was conducted in this case. And during that time, there was no contract ever produced between the appellant and the school. So to hear appellant make an argument that there were contracts is a bit perplexing. Such documents were requested. They were never produced. The issue before in the complaint was that we had an applicant to a medical school who then failed his step one medical licensure exam. He then chose not to take that exam again and discontinued his medical education. That is the reason he does not have a medical degree and he didn't go on to get residency. But even if he was, and I think it's important with the few minutes that I have left to cover both some of the allegations that were made by appellant, as well as the fact that the jurisdictional issue is only one of the paths to dismissal that the district court judge had. And we had argued on the original motion to dismiss, it wouldn't have mattered. Because even if there was specific jurisdiction, which we expressly claim there wasn't, all of these claims about a comment being made to Mr. Goldman in April 2016 were time barred. The complaint wasn't filed until seven years later. So whatever might be said of jurisdiction, which we're very passionate about the fact that there isn't, those claims were all stale anyway. So he wouldn't be able to assert them regardless. The GBO claim as well as the breach of warranty claim. The breach of warranty claim also fails for yet a secondary reason. Not only because there was a four-year statute of limitations which had expired at the time that the 2020 complaint, or the 2023 complaint was filed, but the breach of warranty claim fails because this case is not a retail or sales transaction. This case involves the provision of an education. There are no goods here. And these were all issues that were never opposed at the time that we filed our original motion to dismiss. And they shouldn't be, they're waived on this motion as well. The other point that Judge Matsumoto raised when she issued her 23-page opinion that is very on point is, the clerkships that Trinity had are irrelevant. Any contractual agreement that it had with a New York entity before appellant applied to the medical school don't give rise to the claims that are asserted here. And because there's no substantial nexus between the two, that also can't serve as a basis to give personal jurisdiction. And what I want to do in my final two minutes and 37 seconds is to address some of the claims that were made in the primary argument. And that is, quote unquote, it's a company doing business in New York. And that is not true, and I think I've already covered that. Trinity has never done business in New York. They've gone to great lengths to make sure that they stay out of New York. They didn't send a representative specifically to interview the appellant, as I've already touched on. Appellant claims that he signed a contract in New York. Not only was there never any such contract produced, but there has been no contract signed in New York. The Office of Admissions sent a conditional offer of acceptance to Mr. Goldman that came from the Roswell, Georgia Admissions Office. It was then signed via DocuSign. It is not at all clear where Mr. Goldman was when he signed his contract. First off, it's not a contract to begin with. It was just an offer of acceptance to attend the school, which then he gave, I believe, a $500 deposit. And it was not signed by Trinity. And even if it was signed in New York, that's just one link in a causal chain that also does not give rise to any of the claims asserted here. I want to briefly, without getting bogged down in it, I do want to touch upon this allegation that a foreign medical school cannot have residencies, cannot offer its students residencies in New York. This was not alleged in the complaint. This issue was never briefed at the lower court. This issue wasn't briefed on this appeal. It is false. It is cut from whole cloth. The medical school maintains a website that lists residencies that its students have successfully been able to obtain. And within those residencies, some are, in fact, in New York. That is work that is the product of those students achieving their own residencies. Trinity does not sponsor or offer residencies as a medical school. It is the same way that a judicial clerkship works. The residency is a fully independent process. And before you can even get a residency, you have to pass all of your United States medical licensure examinations, of which there are three. The appellants in this case never passed the first one. So if he didn't get a residency, it was not because of anything that Trinity did. It was because he failed his exam and chose not to take it again. And with that, I get my six seconds up. Thank you, Your Honors. I appreciate the time. Your Honor, to be very quick. It's very clear. I'm blind. If I were to go to New York, I don't live here anymore, and I were to drive a car in New York, even though I was just passing through and I were to have an accident, I could be sued in New York. So to suggest that just because they might have a transitory presence in New York, I think completely belies the fact of the long-arm statute in New York. If the incident takes place in New York, New York should have jurisdiction. Number two, with respect to the contract, you know, we're playing games here with what we call a contract. My client signed a document that was provided to him by the defendant. Do you agree that there are no New York cases on this? To the best of my knowledge, I agree. Your Honor, this may be very first impression here.  But he definitely signed something, and he did it from New York. Number three, her arguments – now, why were – So the district court didn't reach due process with respect to specific jurisdiction? Correct. How do you – I mean, why – given the lack of contacts that we've heard about, is there a due process problem here? Absolutely. I believe the court – listen, I don't know how else to put it. I think the court got it wrong. I'm asking you if there is a due process problem in terms of the exercise of jurisdiction. Yes, I believe there is, and I believe the court ruled on this particular issue, not the other issues. So why we even bring that up here, and why the fact that he didn't pass or was dismissed – I can bring up a question if I want to, even if it's not raised – I understand, Your Honor. I'm just – I don't think you're understanding my question. Okay. Maybe I'm not. My question is why – is there a due process issue with the exercise of personal jurisdiction over Trinity, given the apparent lack of any substantial contacts with the state? No, I don't believe there's any problem with due process. I think it's completely fair to say that they only met – they met with multiple people. We didn't argue they met with multiple people. We argued they met with my client, okay, the statute of limitations issues that were raised. My client did – There are cases that say the transaction has to be meaningful. It can't just be, you know, a passing through type thing. I don't think my client would have been admitted to the medical school without conducting this interview. I think it was an essential component of his attending. I think the fact that he would not be able to do a residency – and just because sister counsel said, well, we had successful students, maybe that's because nobody ever checked the rules. I mean, it's not this case, but I've had a personal – an additional client on another medical school who was not allowed to have a residency in New York. Sounds like a different case. It's a different case, but what's interesting – Thank you. Thank you very much. Can I just have 30 more seconds, Your Honor? Okay.  Now, sister counsel has a problem here because if the school obtained the waiver from the state of New York allowing extra time in clinicals outside of the country, I think it's pretty good evidence they have a relationship with New York. If they didn't get that waiver, then I think it's misrepresentations to my client that they've had people successfully get residencies in New York. In either case, I think my client still has a matter that can be litigated in New York. Thank you, Your Honor. Thank you very much. We'll reserve the decision.